**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALTA WATERFORD, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | Case No. 25-cv-3606 |
| | ) | |
| v. | ) | Honorable Joan B. Gottschall |
| | ) | |
| CONNECTM TECHNOLOGY | ) | |
| SOLUTIONS, INC., and BHASKAR | ) | |
| PANIGRAHI, | ) | |
| | ) | |
| | ) | |
| Defendants/Counterclaim-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alta Waterford, LLC ("Alta") provides investor relations services.  It brought
this diversity suit seeking to enforce a written agreement with defendant ConnectM Technology
Solutions, Inc., under which Alta claims it is owed $202,000 for two months of services it
provided in 2025.

## I. BACKGROUND

### A. Alta's Allegations and Claims

Alta names as defendants ConnectM and Bhaskar Panigrahi, ConnectM's alleged
guarantor (referred to in this Memorandum Opinion and Order jointly as ConnectM).  The
complaint alleges that on or about January 8, 2025, ConnectM agreed in a written contract (the
contract or the agreement) to pay Alta for investor relations services, including "increasing the
liquidity of trading volume" in ConnectM's stock.  Compl. ¶ 6, Dkt. No. 1.  The term of the
agreement was one month, with a $100,000.00 payment due 30 days after its execution.
Agreement ¶¶ 3, 5a–5b, Dkt. No. 1-1.  Perhaps inconsistently (but of no apparent consequence
here), the written agreement also provides that payment is due within 5 days after ConnectM is
invoiced.  Agreement ¶ 6.  The agreement provides for a $250.00 daily late fee if payment is not

received 5 days after the invoice.  *Id.*  The agreement further provides that it will "automatically rollover [sic] under the same terms and conditions unless written notice of termination or renegotiation is given by either the Customer or Service Provider at least 5 days prior to the end of the current term," with payment due upon the date of rollover.  Agreement ¶ 19.  The agreement contains a heading called "Entire Agreement," after paragraph 17 and before paragraph 18, but nothing stated under the "Entire Agreement" heading resembles what is normally viewed as an integration clause.[1]  Rather, under the heading "Entire Agreement," the written contract recites details about cancellation by Alta, how the Agreement rolls over, and various obligations of ConnectM to advise Alta of stock changes.  Agreement ¶¶ 18–20.

Alta alleges that it "performed the investor relations services agreed to in the contract by disseminating [ConnectM's] news releases to Plaintiff's list of subscribers to Plaintiff's investment newsletters."  Compl. ¶ 8.  Plaintiff alleges that it invoiced ConnectM $100,000 for the work performed.  Compl. ¶ 9.  Late fees accumulated, totaling $2,000, as of February 24, 2025.  Compl. ¶ 10.  Alta further alleges that on February 8, 2025, the agreement rolled over for another month.  Compl. ¶ 12.  Alta alleges that "[t]he Defendant has not paid Plaintiff even after multiple demands."  Compl. ¶ 18.  The complaint pleads a Breach of Contract claim in Count I and a Breach of Guarantee claim against defendant Panigrahi in Count II.  Compl. ¶¶ 19–27.

---

[1]In *Burkross v. Thompson*, 2011 WL 10069617, at *7 (Ill. App. Ct. 1st Dist. Apr. 29, 2011), the court set forth language of a typical integration clause: "This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or otherwise."  No comparable language exists in the parties' written agreement here.

**B. ConnectM's Counterclaims and Affirmative Defenses[2]**

Defendants plead the affirmative defenses of fraudulent inducement, unilateral mistake, and estoppel.[3]  Answer pp. 6–16, Dkt. No. 12.  They also plead counterclaims for fraudulent inducement and, in the alternative, reformation of contract.  Answer pp. 22–27.

ConnectM alleges, with respect both to its fraudulent inducement affirmative defense and counterclaim, that leading up to the January 8, 2025, signing of the parties' written agreement, Alta repeatedly assured ConnectM that it would owe nothing unless Alta achieved results.  Aff.Def.. ¶¶ 5-15.  ConnectM quotes a December 20, 2024, email from Alta's vice-president of sales, Mariz Cabi, to ConnectM's president, Nayeem Hussain, which states that Alta has a "0$ upfront post-payment contract[4] that we would like to do with you.  We produce results, you pay after.  If we don't produce, you pay nothing."  Aff. Def. ¶ 6.  On January 6, 2025, Alta representative Tom Silver sent ConnectM a "pitch deck"[5] stating, "We set clear goals and we only get paid once reaching them."  Aff. Def. ¶ 8.  On or about January 7, 2025, Silver and Alta representative Ben Steinberg spoke with Hussain, via telephone, and described their services as "risk-free."  Aff. Def. ¶ 10.  It is alleged that "[d]uring that conversation on or about January 7, 2025, Silver and Steinberg again promised that Alta would be owed nothing and [ConnectM would] have no obligations to pay Alta unless [Alta] met all obligations . . . and increased the market cap to meet the Nasdaq compliancy [sic] requests for ten days."  Aff. Def. ¶ 11.  Further,

---

[2] ConnectM's Answer, Dkt. No. 12, includes in one document its answer, affirmative defenses, and counterclaims. The answer numbers its paragraphs corresponding to Alta's complaint, then begins the numbering again with its "Allegations Supporting Defendants' Affirmative Defenses," Answer pp. 6–10, attaches its affirmative defenses (with no numbered paragraphs), and then proceeds with the numbered paragraphs of its counterclaims, beginning again with #1.  The court refers to the Allegations Supporting Defendants' Affirmative Defenses as "Aff. Def." and refers to the affirmative defenses as they are numbered in the answer, without paragraph numbers.  The term "Answer" as used herein refers to the entire document comprising Dkt. No. 12.

[3] An unclean hands affirmative defense has been withdrawn.  Resp. to Motion to Dismiss at 12, Dkt. No. 19.

[4] The parties do not explain what a "post-payment contract" is.

[5] "Pitch deck" is not defined by the parties but what is set out in the affirmative defenses appears to be a screenshot. This term has been used in other cases to refer to "promotional PowerPoint slideshows that use both pictures and words to explain a particular company to prospective investors."  *Peters v. Frontiere*, 2023 WL 5237436, at *3 n.4 (D.N.M. Aug. 15, 2023).

in that same conversation, "Silver and Steinberg promised Hussain that Defendants would have no obligation to pay for Alta's offered services, nor would Alta seek payment for any services, unless and until Alta achieved these objectives and drove 'instantaneous liquidity' to [sic] ConnectM's stock." Aff. Def. ¶ 12.

The agreement was signed on January 8, 2025, with what ConnectM describes as its "materially inconsistent" written terms. Aff. Def. ¶ 13. Nevertheless, on or about January 15, 2025, Silver and Steinberg spoke by telephone with Hussain and ConnectM's vice-president and head of global operations, Ryan Fant, and "Steinberg again directly contradicted the Contract's provisions mandating payment after thirty days, expressly stating that he wanted to retain ConnectM as a long-term client for Alta," and "further promised that ConnectM would not have to pay Alta anything under the Contract if Alta did not achieve the previously mentioned metrics." Aff. Def. ¶¶ 14– 15 (quotation in ¶ 15). ConnectM further alleges that "[f]ollowing the execution of the Contract, ConnectM monitored the trading activity of its stock. Thirty days after the Contract's execution, ConnectM's share price, retail liquidity, and average trading liquidity volume did not increase due to Alta's work, nor had ConnectM met the $50 million Nasdaq minimum market cap requirement." Aff. Def. ¶ 17. Despite "negligible" results, Alta, on February 11, 2025, demanded that ConnectM pay Alta $100,000; "rolled over the Contract for an additional thirty days; and informed ConnectM that it was obligated to pay an additional $100,000 for services provided in February 2025." Aff. Def. ¶¶ 18–19. Defendants denied Alta's payment requests and terminated the agreement. Aff. Def. ¶ 20.

## II. ANALYSIS

Alta has moved to dismiss ConnectM's counterclaims and to strike its affirmative defenses. Dkt. #15. As claims for affirmative relief, defendants' counterclaims must satisfy the "short and plain" statement requirement of Federal Rule of Civil Procedure 8(a)(2). *See, e.g.*, *Firestone Fin. Corp. v Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015). Rule 12(f) governs Alta's motion to strike the affirmative defenses from the answer. Like ConnectM's counterclaims, the

4

affirmative defenses "are subject to all pleading requirements of the Federal Rules of Civil Procedure," and affirmative "defenses must set forth a 'short and plain statement,' of the defense" in compliance with Rule 8(a)(2). *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (citation modified); *see also Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141–42 (7th Cir. 2009); *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399–1400 (7th Cir. 1991).

To satisfy Rule 8(a)(2)'s "short and plain statement" requirement, a pleading must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In contrast, "a formulaic recitation of the elements of a cause of action" does not satisfy the plausibility standard; nor do "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations omitted).

## A. Fraudulent Inducement

Defendants' first affirmative defense and first counterclaim are for fraudulent inducement of a contract. Answer. pp.10, 22. The elements of fraudulent inducement under Illinois law are: "(1) that the defendant made a statement; (2) of a material nature; (3) which was untrue; (4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; (5) relied on by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) the victim's reliance led to his injury." *Gen. Elec. Credit Auto Lease, Inc. v. Jankuski*, 532 N.E.2d 361, 363 (Ill. App. Ct. 1st Dist. 1988) (citing *Brainerd v. Balish*, 518 N.E.2d 317, 320 (Ill. App. Ct. 5th Dist. 1987)). "[A] person claiming to be a victim of fraud may . . . contend that he or she was induced to enter into the contract as a result of fraud and, accordingly, ask to have the contract rescinded and restitution ordered." *Id.* "[E]vidence outside the terms of a written contract is properly admissible to prove an action based on fraud." *Id.* at 365.

5

Illinois law on the subject of promissory fraud has been described by the Seventh Circuit as "murky," a description with which this court agrees, having read cases that do not always seem consistent. *See* BPI *Energy Holdings, Inc. v. IEC (Montgomery), LLC,* 664 F.3d 131, 137 (7th Cir. 2011). But reading the Illinois cases at their most demanding of the party claiming fraud, and following the Seventh Circuit's guidance, Illinois recognizes a tort of promissory fraud, as long as the fraud is part of a scheme to defraud. *Id*. at 136 (citing Illinois cases). A scheme to defraud requires proof of a pattern of fraudulent statements, or one "particularly egregious fraudulent statement." *Id.* (citing *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995)).

Alta argues that "Illinois courts have consistently held that a party who signs a written contract cannot later claim fraudulent inducement based on misrepresentations that contradict the contract's terms." Mot. Dismiss 4, Dkt. No. 15 (citing *Belleville Nat'l Bank v. Rose*, 456 N.E.2d 281 (Ill. App. Ct. 5th Dist. 1983)). Alta is correct as to the holding of *Belleville*, but it fails to come to terms with the cases that reach the opposite conclusion, such as *Jankuski*, on which ConnectM relies.[6] *Gen. Elec. Credit Auto Lease, Inc. v. Jankuski*, 532 N.E.2d 361 (Ill. App. Ct. 1st Dist. 1988). *Jankuski* held that the defendants' failure to allege that they were denied an opportunity to read the lease on which they were sued was not fatal to their claim of fraud in the inducement. Reconciling cases such as *Belleville* and *Jankuski* is challenging except for one key difference: *Belleville* was a summary judgment case in which all the relevant facts were before the court whereas *Jankuski* came before the court on a motion to dismiss, as does the instant case, where the court stated explicitly that "there must exist no possible set of facts under which the non-movant could recover." *Jankuski*, 532 N.E.2d at 365.

---

[6] Alta cites *Jankuski* for the principle that "a defendant waives the right to allege fraud when they do not read the contract," providing the pinpoint citations, "at 58, 60–61." Reply 3, Dkt. No. 20. *Jankuski* holds the opposite: "The absence of an allegation that the Jankuskis were denied the opportunity to read the lease is not a necessary element to state a cause of action for fraud in the inducement." *Jankuski*, 532 N.E.2d at 365. The pinpoint citations provided by Alta do not correspond to the citation range in any of the reported versions of the case the court has found.

6

At the motion to dismiss stage, as both parties recognize, the court must take the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.,* 578 F.3d 505, 510 (7th Cir. 2009). While proving justifiable reliance may prove challenging for ConnectM given the parties' written contract, ConnectM has pleaded that it received two writings, which appear to be advertising materials, shortly prior to the execution of the written contract, and was a party to a telephone conversation a week later, in which Alta representatives allegedly represented to ConnectM that no payment would be required if Alta could not produce the promised metrics. These repeated statements, once the evidence is developed, could arguably constitute a scheme to defraud. Beyond that, a written contract with the heading "Entire Agreement," but nothing under that heading which could be construed as integration language, adds plausibility to ConnectM's allegations. The court cannot find as a matter of law that ConnectM cannot possibly prove what it has alleged, or that it would be impossible for ConnectM to prove facts and circumstances showing that its reliance on Alta's allegedly repeated, written and oral extra-contractual promises was reasonable. The motion to dismiss ConnectM and Panigrahi's first affirmative defense and first counterclaim (fraudulent inducement) is denied.

Alta further argues that ConnectM is relying on promises and representations of its intention to engage in future conduct, and such promises and representations ordinarily cannot make out a claim for fraud in the inducement. *See Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 853–54 (7th Cir. 2007); *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.,* 451 F. Supp. 2d 982, 988 (N.D. Ill. 2006) (citing *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)). An exception to this general rule allows a plaintiff to make out a promissory fraud claim by showing that the defendant's promise or representation about future conduct "was a part of a scheme to defraud." *Ass'n Ben. Servs.*, 493 F.3d at 853 (citations omitted); *see also Star Registry*, 451 F. Supp. 2d at 988. If what ConnectM alleges is proven, it may well prove a scheme to defraud.

More significantly, the gravamen of ConnectM's fraud claim is not that Alta committed fraud by promising that it could or would produce specified future results but that it committed fraud by promising that ConnectM would not be obligated to pay if Alta failed to perform. The issue raised by ConnectM is not whether Alta performed as promised. The issue is whether ConnectM had any obligation to pay if Alta failed to do so. *Cf. Ass'n Ben. Servs.*, 493 F.3d at 853–54.

**B. Estoppel, Reformation, and Unilateral Mistake**

In moving to strike ConnectM's second affirmative defense of unilateral mistake and fourth affirmative defense of estoppel, and moving to dismiss its reformation counterclaim, Alta reiterates its arguments concerning the necessity of plausibly pleading justifiable reliance (or ordinary care in the case of ConnectM's reformation counterclaim). This argument, in its various iterations, reprises in different words the contention that ConnectM and Panigrahi could not have reasonably relied on Alta's alleged promises to the extent they were inconsistent with the written contract.

Alta largely relies on summary judgment cases where the issue of reasonable reliance or ordinary care could be assessed in the context of the parties' evidence. *See, e.g.*, *LM Ins. Corp. v. Sourceone Grp., Inc.*, 2006 WL 2051368, at *13 (N.D. Ill. July 18, 2006); *Regensburger v. China Adoption Consultants*, 138 F.3d 1201, 1207 (7th Cir. 1998). Under Illinois law, "[T]he elements of fraud . . ., including reasonable reliance, generally are questions of fact." *Glass v. Kemper Corp.*, 949 F. Supp. 1341, 1350 (N.D. Ill. 1997), *aff'd*, 133 F.3d 999 (7th Cir. 1998) (citing *Jeffrey M. Goldberg & Assocs., Ltd. v. Collins Tuttle & Co.*, 637 N.E.2d 1103, 1108 (Ill. App. Ct. 1st Dist. 1994)) (summary judgment opinion). At the motion to dismiss stage, all the court has legitimately before it are ConnectM's well-pleaded allegations, which are consistent with a scheme to defraud. Accordingly, the court denies Alta's motion to dismiss the reformation counterclaim and to strike the second and fourth affirmative defenses. *See Wigod v. Wells Fargo*

*Bank, N.A.*, 673 F.3d 547, 569–70 (7th Cir. 2012); *Logan Square MRI & Diagnostic Ctr., Inc. v. Philips Elecs. N. Am. Corp.*, 545 F. Supp. 2d 816, 819 (N.D. Ill. 2008).

### III. CONCLUSION

ConnectM has pleaded enough to allow both counterclaims and three remaining affirmative defenses to go forward. Alta's Combined Motion to Dismiss Counterclaims and to Strike Affirmative Defenses, Dkt. No. 15, is denied.

Date: March 6, 2026

/s/ Joan B. Gottschall
United States District Judge

9